Chief Justice Robertson,
delivered the opinion of the court.
During the last war between the United States and Great Britain, Jabíes McKinsev, son-in- ' law of John James, being in the north-western army, his wife was settled by her father, on a tract of land which he (the father) owned.
.After his return from the army, McKinsey lived on the land some years wi h his wile, and having made some improvements upon it, left it in the posses sion of a tenant, and removed with his wife to Tennessee. The wife having died, James sued the tenant in ejectment, and evicted him. This suit in chancery was aberwards brought by McKinsey, against the executors and heirs *626 of James (he having died in the mean time) for compen* sation for the improvements.
•in-lav/by'a"” w (Uo'liis * diiúgliíer end son ‘in-law in-tetUe on^and improve the land, and af-terwards evicts them; the son-in-law is entitled^to value of the amelioratii ns by him added to the land; but not the Improfemenis. In such ease, father-inlaw to reoovnrtied rent of son-in-law.
The hill alleges, that McKinsey was induced by James to settle upon and improve the land, in consequence of a paiol gift of it to him and his wife, as an •advancement by her father.
The answers deny the«e allegations of the bill, and insist that the use of the land had been worth more than the improvements.
Only two depositions tend to prove the alleged gift. David McKinsey swore that he had heard John James say, that he had settled James McKinsey on the land, and that McKinsey was to be entitled to it by paying $20, the state price.
William Clouch swore, that before Mrs. McKinsey settled on the land, and whilst her husband was in the army, he heard her father say, that McKinsey must settle on the land, and that he intended to give it to him, he (McKinsey) paying the state price, §20; and ■he also swore, that shortly after this conversation, Mrs. McKinsey settled on the land.
The circuit court decreed, that McKinsey was entitled to the value of all lasting and useful improve-men Is made by him, before service of the notice in cjeciment, and' should account for waste if any had t,een committed, and for rents from the notice, until the possession of the land had been surrendered to John Jarnes.
Commissioners appointed to assess the value of im-provemelps having reported that there had been no waste; and (hat the impiovements were worth §72, and that the rent, since the notice, was worth §12, the c¡rcuft Coart decreed to McKinsey §00 and the costs of , . - ^ Suit.
If -Limes gave or promised to give the land to his daughter, or to her husband, orto both, and aferwards without sJhcent came, refu ed-o efíectua e the g Ü, Mcivinsey wo.Jd be ent.tied in ‘fjio •onai ndJy to die value of the aniel orations, which he was induced, by his faith in the preñase of James, to add to the land, Shrieve vs. Grimes, IV Littell’s Rep. 224.
*627 And if the gift had been entire and unqualified, without any other consideration, than a desire to ad-vanee Mrs. McKinsey, rent shoal 1 not be charged to McKinsey, until after he had notice of the revocation, or intention to revoke.
Bat even then, the decree has transcended the just limits prescribed by the principles of eq iity. If James was guilty of no frau i, (and none is proved) he should not be charged with the cost, or abstract value of all the improvements which McKinsey may have made on tile land. They may be of no value to him or to his heirs. They may not increase the value of the land. They may oe of such a kind as to subduct from- the value of the-land in an unimproved stale. The principle an I only one, which can entitle McKinsey to any . decree for improvements, is the broad and plain maxim-, of equity, that “no one shill be enrich'd by another’s loss.” If, when James took possession of the land, the improvements put upon it by McKinsey, and which went with the land, rendered it more valuable than it would have been without them, to the extent of such accession, James was profiled, and McKinsey sustain*, ed a correspondent loss. And to this extent, equity would entitle McKinsey to relief. As he is not within the provision of any positive law, he is entitled to no-more.
But the decree of the circuit court does not appear to have been regulated by this standard. The commissioners were directed to ascertain the value of the improvements. They reported their value; and the court decreed that vúue. The value of the improvements may, and probably does, exceed the value of the ame-liorations. The improvemen's may be worth -f 72; and ' nevertheless, there may be no amelioration of the land, or accession to its value. James may the,-efore, not he benefitted by the improvements; and consequently, McKinsey would not be entitled to any decree, according to the principle of equity, which has been stated.
Besides, the parol promise, if it was ever made, was not a pure gift; Mciünsey was to pay $20. If James gave the land, he could not claim rents. So far therefore. as he did give it, rents are not chargeable before notice. But as McKinsey never paid the $20, he should not be exempt from a charge for rents. He, *628 should be charged at least with the profits or legal interest of the ,$¡20, from the time he took possession; because, to this exient, there was a sale and not a gift, and McKinsey should not be alloc,ed the use of both the land and the money, w.thcui rent or inteiesC The presumption is, that James pa d ¡he state price for the land. Th's he did not give to McKinsey; and therefore, as McKinsey enjoyed the use of the land, he should account for the value of the me of -the $20, unless he paid it, and there is no intimation that he ever did.
Owsley, for plaintiffs; Cunningham, hr defendant.
It is even doubtful, whether the defendant in error has shown that he is entitled to any relief. But as the decree will be reversed for a defect of parties, and the cause will be remanded for further proceedings, it: Is not proper now to decide on the merits, except s:o far as may he useful in the further progress of the case in the circuit court.
The heirs of John James were necessary parties,, The hill alleges, that Elizabeth Vardiman was one of the heirs; but also alleges her death; and therefore, she was not made a parly. An answer was filed, purporting to be theansuer of Elizabeth Vardiman. But as the bill alleged, that Elizabeth, the heir of James, was dead, and as she was not made a defendant, the answer did not make her a party.
■ Wherefore, the decree is reversed, and the eause remanded, for such further proceedings as may be proper.